1

2

3

4

5

6

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

7

8

9

10

11

12

13

| | |
|---|---|
| CHRISTOPHER FOSTER; SHANNELL HADDON; LAWRENCE JOHNSON; and DINA TELLEZ,<br><br>                              Plaintiffs,<br><br>       v.<br><br>SPOKANE COUNTY, WASHINGTON; DAVID SKOGEN; and CRAIG CHAMBERLAIN,<br><br>                              Defendants. | NO:  2:13-CV-411-RMP<br><br>ORDER GRANTING MOTION FOR SUMMARY JUDGMENT AND GRANTING MOTION TO STRIKE |

14

15

16

17

18

19

20

Before the Court is Defendants' Motion for Summary Judgment, ECF No. 14, and Plaintiffs' Motion to Strike, ECF No. 33.  The parties presented oral argument on these motions on December 2, 2014.  Plaintiffs were represented by Richard D. Wall.  Defendants were represented by Heather C. Yakely.  The Court has reviewed the motions and considered the parties' oral arguments.  The Court is fully informed.

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT AND
GRANTING MOTION TO STRIKE ~ 1

BACKGROUND

Plaintiffs' residence was searched and Plaintiffs were arrested after they were accused of human trafficking.  Plaintiffs seek damages under federal and state law for their arrests and damages for defamation in regard to statements that an officer of the Spokane County Sheriff's Office made about the human trafficking investigation.

Around midnight on May 23, 2012, a woman named Lydia and her friend Taylor[1] reported to police that for the past year Lydia had been held against her will and sold for sex from several hotels in Spokane Valley.  ECF Nos. 17 at 2, 3; 17-1 at 14-15.  Lydia alleged that arrangements were made through websites including Craigslist and Backpage and that she was forced to smoke methamphetamine.  ECF No. 17 at 3.  Lydia identified all four Plaintiffs among her abusers.  ECF No. 17-1 at 14.

Lydia also conveyed that she was worried about other girls whom she had seen a few days earlier at a house on Nora Avenue.  ECF No. 17 at 3.  She stated that she had seen the girls sitting on a bed in the basement and that there was a deadbolt lock on the basement door.  ECF No. 17 at 3.  Lydia further explained that there were numerous guns at the house and that the persons who lived there carried guns when they were at the house.  ECF Nos. 17 at 4; 17-1 at 15.

[1] Lydia's and Taylor's last names are omitted to protect their privacy.

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT AND GRANTING MOTION TO STRIKE ~ 2

David Skogen, a detective with the Spokane County Sheriff's Office, interviewed Lydia on the night that the two women came to the police. ECF No. 17 at 2, 3. Detective Skogen found that "Lydia gave very specific information regarding the individuals involved and the locations that she had been taken . . . ." ECF No. 17 at 3. Based on Lydia's demeanor, Detective Skogen reports that he thought that she was credible. ECF No. 17 at 5. However, Detective Skogen also indicates that he "always believe[s] [his] victims until there's a reason for [him] not to." ECF No. 23-8 at 97-98.

Detective Skogen found a police report from March 31, 2012, which records an incident involving Lydia at a Spokane Valley motel. *See* ECF No. 17 at 4; *see also* ECF No. 17-1 at 16-17 (narrative portion of police report). The report explains that officers responded to the motel because Lydia was screaming for 911. ECF No. 17-1 at 16. Lydia told the officers that Trevor Franklin, whom she had been dating, "basically" had been holding her captive for the last few months and had been making her prostitute herself. ECF No. 17-1 at 16-17. Lydia also reported to the officers that Franklin had been trying to get her addicted to methamphetamine and that he had burned her thigh with a glass pipe because she refused to smoke the drug. ECF No. 17-1 at 17. Lydia showed the officers a burn mark as well as several bruises, which she alleged that Franklin also had inflicted.

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT AND GRANTING MOTION TO STRIKE ~ 3

ECF No. 17-1 at 17.  Detective Skogen found that this report corroborated much of the information that Lydia provided on May 23, 2012.  *See* ECF No. 17-1 at 16.

Lydia also told Detective Skogen that she recently had been in jail for breaking her father's phone.  ECF No. 23-1 at 14.  The police report from that incident shows that on May 1, 2012, Lydia, who had been staying at her father's place of business, broke her father's cell phone during a verbal altercation.  ECF No. 23-4 at 45.

Lydia's friend, Taylor, was interviewed separately.  ECF No. 17 at 3.  Detective Skogen affirms that Taylor's statements "appeared to corroborate" information obtained from Lydia.  ECF No. 17 at 6.  However, all of Taylor's statements regarding Lydia's claims apparently were based on information that Taylor had heard from Lydia.  *See* ECF No. 23-2 at 33.  Taylor stated to police that Lydia had told her that Lydia's ex-boyfriend, Marcus Schur, had been murdered because he tried to help Lydia.  *See* ECF Nos. 17-1 at 15; 23-10 at 120.  Before applying for a search warrant based on Lydia's allegations, police located a news article reporting that Schur had been murdered in December.  *See* ECF No. 17-1 at 15.

Particularly due to Lydia's allegation that other women were in the basement of the Nora Avenue house, Detective Skogen obtained a search warrant for the location on an expedited basis.  ECF No. 17 at 6.  Detective Skogen requested a

no-knock warrant because of the nature of the suspected crimes, the information that there were multiple firearms at the house, and the observation from as recently as one hour before applying for the warrant that there was a high volume of traffic at the house. ECF No. 17-1 at 18. The warrant was signed at approximately 2:30 a.m. on May 23, 2012. ECF No. 17-1 at 21.

Officers executed the search warrant at approximately 4:00 a.m. ECF No. 17 at 7. They did not find any women in the basement, nor was there a deadbolt on the basement door, as Lydia had described. *See* ECF Nos. 16-2 at 109; 23-5 at 61; 23-7 at 79. Officers did recover, however, drug pipes, laptops, thumb drives, white pills, and a hand-written letter to Lydia from Franklin, the man who was discussed in the police report dated March 31, 2012. ECF No. 16-2 at 111.

Detective Skogen affirms that computers are used in sex trafficking and that the computer equipment seized from the Nora Avenue house could have confirmed Lydia's statement that her abusers were advertising online. ECF No. 17 at 7. Moreover, the drug paraphernalia corroborated Lydia's claim that she was forced to use drugs, or at least that the four individuals whom she accused were in possession of drugs. ECF No. 17 at 8. The letter from Franklin to Lydia also corroborated that Lydia had been at the house. ECF No. 17 at 8.

Detective Skogen was concerned that if the suspects were sex traffickers, they could destroy or move evidence and would pose a danger to the community if

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT AND
GRANTING MOTION TO STRIKE ~ 5

they were not held in custody while the investigation continued.  ECF No. 17 at 8.

The detective explains that "[t]he possibility still existed that the other women,

although not found at the house that night, were still victims and still in danger."

ECF No. 17 at 8.  The four suspects, Plaintiffs in this action, were arrested for

trafficking.  ECF No. 23-7 at 80.

Deputy Craig Chamberlin, the Public Information Officer for the Spokane

County Sheriff's Office, made statements to the media, which the Court transcribes

from the video exhibits that Defendants offered in opposition to Plaintiffs' motion:

> Everything that our victim said was going to be in the residence—
> basically everything was corroborated.  So, she's being extremely
> helpful with the investigation.  This is a very unique, complicated
> investigation, so, there's still a lot more work that has to be done
> within this investigation.
>
> . . . .
>
> She was very specific when speaking with our detectives prior to
> having a search warrant signed for the residence, and basically all the
> facts that she gave about the residence, all the things that we'd find in
> there, our investigators did locate.

*See* ECF No. 24, Exs. K, L, M (video recordings).  Segments of the interview with

Deputy Chamberlin were broadcast by at least three television stations, which also

reported the names of all four Plaintiffs.  ECF No. 24, Exs. K, L, M.  News of

Plaintiffs' arrests and of the alleged crimes was publicized also in newspapers and

on the internet.  *See* ECF No. 23-10 at 117-22.  Plaintiffs were arrested in the early

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT AND
GRANTING MOTION TO STRIKE ~ 6

morning of May 23, 2012, the Wednesday before Memorial Day, and were

released on May 29, 2012, after no charges were filed.  *See* ECF No. 15 at 8.

ANALYSIS

The parties dispute whether the Court should grant Defendants' summary

judgment on Plaintiffs' Section 1983 civil rights claims for unlawful arrest and

defamation.  Plaintiffs also assert state law claims for false arrest or false

imprisonment, although they recognized during oral argument that the viability of

these claims depends upon the outcome of their federal claim of unlawful arrest.

Plaintiffs do not contest dismissal of their claims for outrage and negligent

infliction of emotional distress.  ECF No. 22 at 1.

As an initial matter, Plaintiffs move to strike an affidavit from Detective

Skogen that Defendants attached to their reply.  ECF No. 33.  Plaintiffs argue that

Detective Skogen's affidavit is invalid under Fed. R. Civ. P. 56(c)(4) because it

"consists entirely of additional argument[s] . . . .  [that] represent his personal

opinions and are not evidence that would be admissible at trial."  ECF No. 33 at 2.

After reviewing the affidavit, the Court finds that the document consists

primarily of Detective Skogen's opinions, which would not be admissible

testimony from a fact witness.  *See* Fed. R. Evid. 602.  Other assertions in the

affidavit simply repeat arguments from Plaintiff's briefing.  The affidavit lacks

relevant admissible evidence.  Accordingly, Plaintiffs' Motion to Strike is granted.

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT AND
GRANTING MOTION TO STRIKE ~ 7

*Summary Judgment Standard*

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The party asserting the existence of an issue of material fact must show "'sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *T.W. Elec. Serv. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968)). The nonmoving party "may not rely on denials in the pleadings, but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991).

In deciding a motion for summary judgment, a court must construe the evidence and draw all reasonable inferences in the light most favorable to the nonmoving party. *T.W. Elec. Serv.*, 809 F.2d at 630-31.

*Claim against Spokane County*

Defendants argue that Plaintiffs cannot establish a claim against Defendant Spokane County. ECF No. 14 at 4-6. Municipalities are included as "persons" to

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT AND
GRANTING MOTION TO STRIKE ~ 8

whom Section 1983 applies and thus may be held liable for causing a constitutional

deprivation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). However,

the doctrine of respondeat superior does not apply to 42 U.S.C. § 1983 claims

against municipalities. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986)

(citing *Monell*, 436 U.S. at 691).

Instead, a plaintiff may establish municipal liability for a Section 1983 claim

by satisfying one of three conditions:

> First, the plaintiff may prove that a city employee committed the
> alleged constitutional violation pursuant to a formal governmental
> policy or a longstanding practice or custom which constitutes the
> standard operating procedure of the local governmental entity.
> Second, the plaintiff may establish that the individual who committed
> the constitutional tort was an official with final policy-making
> authority and that the challenged action itself thus constituted an act
> of official governmental policy. Whether a particular official has final
> policy-making authority is a question of state law. Third, the plaintiff
> may prove that an official with final policy-making authority ratified a
> subordinate's unconstitutional decision or action and the basis for it.

*Gillette v. Delmore*, 979 F.2d 1342, 1346-47 (9th Cir. 1992) (citations and internal

quotations omitted).

Plaintiffs claim that summary judgment in favor of Spokane County would

be inappropriate because a jury could conclude that Plaintiffs' unlawful arrests

were the result of training that Detective Skogen received as a member of the

Spokane County Sheriff's Office. ECF No. 22 at 21-22. Specifically, Plaintiffs

claim that Detective Skogen's training led him to believe that he could assume that

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT AND
GRANTING MOTION TO STRIKE ~ 9

a victim was telling the truth and that his training led him to believe that it was lawful to base probable cause to arrest suspects on that assumption.  ECF No. 22 at 21.

A municipality may be liable in a Section 1983 action for its failure to train its employees.  *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).  However, the "first inquiry in any case alleging municipal liability under § 1983 is the question of whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation."  *Id.* at 385.  Moreover, "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact."  *Id.* at 388.

Here, Plaintiffs have not shown that there is a genuine dispute as to whether the alleged constitutional violations were the result of Spokane County's deliberate indifference to the public's rights.  Although Detective Skogen discussed his training during his deposition, ECF No. 23-8 at 93-96, Plaintiffs offer no evidence showing that the alleged constitutional violation was the result of training or lack of training.  Moreover, even assuming that Detective Skogen's allegedly improper trust of victim statements was the result of his training, there is no evidence that a deficiency in his training would be anything other than "negligence on the part of the municipal defendant—a much lower standard of fault than deliberate

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT AND
GRANTING MOTION TO STRIKE ~ 10

1    indifference." *See Alexander v. City & Cnty. of San Francisco*, 29 F.3d 1355,

2    1367 (9th Cir. 1994).

3         Therefore, summary judgment is appropriate in Spokane County's favor in

4    regard to Plaintiffs' Section 1983 claim.

5         *Unlawful Arrest*

6         Plaintiffs assert that they were arrested unlawfully because the officers

7    lacked probable cause to believe that they had committed the crime of human

8    trafficking.  ECF No. 22 at 18.  An arrest made without probable cause is a Fourth

9    Amendment violation giving rise to a claim for damages under Section 1983.

10   *Rosenbaum v. Washoe Cnty.*, 663 F.3d 1071, 1076 (9th Cir. 2011) (quoting

11   *Borunda v. Richmond*, 885 F.2d 1384, 1391 (9th Cir. 1988)).  Probable cause exists

12   to make a warrantless arrest "when the facts and circumstances within [the

13   officer's] knowledge are sufficient for a reasonably prudent person to believe that

14   the suspect has committed a crime."  *Id.* (citing *Crowe v. Cnty. of San Diego*, 608

15   F.3d 406, 432 (9th Cir. 2010)).

16        The doctrine of qualified immunity protects government officials, including

17   police officers, from liability when "their conduct does not violate clearly

18   established statutory or constitutional rights of which a reasonable person would

19   have known."  *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  An officer

20   who makes an arrest without probable cause is entitled to qualified immunity "if it

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT AND
GRANTING MOTION TO STRIKE ~ 11

was objectively reasonable for him to believe that he had probable cause."

*Rosenbaum*, 663 F.3d at 1076 (emphasis omitted) (citing *Ramirez v. City of Buena Park*, 560 F.3d 1012, 1024 (9th Cir. 2009)).  In other words, "the question in determining whether qualified immunity applies is whether all reasonable officers would agree that there was no probable cause in this instance."  *Id.* at 1078.

Plaintiffs were arrested for trafficking.  Washington law provides, in relevant part, that a person commits trafficking in the first degree when he or she:

> Recruits, harbors, transports, transfers, provides, obtains, buys, purchases, or receives by any means another person knowing, or in reckless disregard of the fact, (A) that force, fraud, or coercion as defined in RCW 9A.36.070 will be used to cause the person to engage in:
>
> > (I) Forced labor;
> > (II) Involuntary servitude;
> > (III) A sexually explicit act; or
> > (IV) A commercial sex act . . . .

RCW 9A.40.100.

Plaintiffs argue that Lydia's statements were insufficient to establish probable cause because her story "was rife with inconsistencies and was in many respects unbelievable on its face."  *See* ECF No. 22 at 13.  For example, Plaintiffs note that Lydia first reported that she had been held captive for nearly one year but later indicated that the abuse had occurred for the prior six months.  According to Plaintiffs, Lydia also provided few details about the alleged abuse.

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT AND
GRANTING MOTION TO STRIKE ~ 12

1    Plaintiffs further contend that the additional information that law

2 enforcement reviewed or could have reviewed before the arrests consisted of either

3 innocuous details or of facts that tended to undercut Lydia's story.  ECF No. 22 at

4 14-18.  Lydia knew, for example, Plaintiffs' names and the location of their

5 residence, but this information would not tend to show that Plaintiffs had engaged

6 in illegal activity.  *See* ECF No. 22 at 14.  Moreover, Lydia's contention that she

7 had been held captive for months by Plaintiffs was inconsistent with the incident

8 report from March 31, 2012, in which Lydia claimed that Franklin had been

9 holding her captive for months.  Also, although it is unclear whether Detective

10 Skogen reviewed the incident report from May 1, 2012, involving Lydia's father,

11 the report's statement that Lydia was living in the basement of her father's

12 business conflicts with her allegation that she had been held captive by Plaintiffs.

13    However, the Court finds that the officers had probable cause to arrest

14 Plaintiffs for human trafficking.  In addition to Lydia's assertion that Plaintiffs had

15 held her captive and forced her to have sex, investigators knew that Lydia had

16 contact with police on March 31, 2012, when she described similar abuse at the

17 hands of Franklin.  Although Plaintiffs contend that this incident report conflicts

18 with Lydia's "very clear" assertion that Plaintiffs were the only persons to have

19 taken her to hotels to work as a prostitute, *see* ECF No. 23-7 at 78, the report is

20 consistent with the details that Lydia provided to Detective Skogen about the

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT AND
GRANTING MOTION TO STRIKE ~ 13

nature of her captivity and attempts to force her to become addicted to methamphetamine. Moreover, during the May 23 interview, Lydia also identified Franklin as one of the people involved in the crime. ECF No. 17-1 at 14.

Investigators attempted to corroborate Lydia's statement that Schur had been murdered because he had tried to protect her. Although Detective Skogen later learned that Schur's death was unrelated to Lydia, *see* ECF No. 23-8 at 102-03, at the time that Plaintiffs were arrested, law enforcement had corroborated Lydia's story regarding the fact and approximate date of Schur's murder.

Furthermore, although officers did not find the young women whom Lydia had described or firearms in the Nora Avenue house, they did locate other evidence that corroborated Lydia's accusations. Officers found drug paraphernalia including a "used drug pipe with meth," which was consistent with Lydia's allegation that she had been forced to use the drug. *See* ECF No. 16-2 at 111. The letter to Lydia from Franklin also corroborated Lydia's account to Detective Skogen because it linked Plaintiffs' residence with another suspect whom Lydia had accused more than one month earlier.

Plaintiffs also imply that officers did not satisfy the two-prong *Aguilar-Spinelli* test, which Washington law still requires when considering the reliability of informant tips that support probable cause. *See* ECF No. 22 at 10-11 (citing *State v. Conner*, 58 Wn. App. 90 (1990)). Under *Aguilar-Spinelli*, a warrant

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT AND GRANTING MOTION TO STRIKE ~ 14

affidavit must set forth some of the circumstances explaining the basis of the informant's knowledge as well as the circumstances supporting the veracity of the information obtained from the informant. *See State v. Jackson*, 102 Wn.2d 432, 435 (1984). However, the basis-of-knowledge prong is satisfied where, as here, the informant conveys first-hand knowledge. *See id.* at 437. Furthermore, several factors support the veracity prong, including that Lydia provided her name and made statements against her penal interest. *See State v. Lair*, 95 Wn.2d 706, 710-13 (1981). Additionally, Lydia's alleged status as a victim lessens the burden necessary to meet the veracity prong. *See State v. Northness*, 20 Wn. App. 551, 557 (1978) ("[T]he report of an identified nonprofessional informant who is a victim or eyewitness of a crime substantially minimizes the danger of casual rumor or irresponsible conjecture which accompanies the report of an anonymous professional informant.").

Perhaps more importantly, however, even where an "informant's tip fails under either or both of the two prongs of *Aguilar-Spinelli*, probable cause may yet be established by independent police investigatory work that corroborates the tip to such an extent that it supports the missing elements of the *Aguilar-Spinelli* test." *Jackson*, 102 Wn.2d at 438. The independent investigatory work "should point to suspicious activity," rather than mere "public or innocuous facts." *Id.*

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT AND
GRANTING MOTION TO STRIKE ~ 15

By the time that Plaintiffs were arrested, officers had corroborated some of Lydia's allegations regarding the crimes, as discussed above. Although some of those corroborating facts were discovered pursuant to the search of Plaintiffs' residence, Plaintiffs do not challenge the legality of the warrant that authorized that search, ECF No. 22 at 13.

Plaintiffs also allege that Detective Skogen improperly based his probable cause finding on his assumption that Lydia was being truthful. However, the Court independently evaluates the existence of probable cause, without regard to an officer's subjective belief. *See Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) ("[A]n arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause."). Accordingly, whether Detective Skogen subjectively believed Lydia is immaterial to the Court's finding that probable cause existed.

In sum, the Court finds that Plaintiffs have not raised a genuine dispute as to whether investigators had probable cause to arrest them.[2] Moreover, regardless of the actual existence of probable cause, Plaintiffs have not raised a genuine dispute as to whether it was objectively reasonable for officers to believe that they had

---

[2] The Court's finding that investigators had probable cause to arrest them also resolves Plaintiffs' state law claims of false imprisonment and false arrest. *See Hanson v. City of Snohomish*, 121 Wn. 2d 552, 563 (1993) ("[P]robable cause is a complete defense to an action for false arrest and imprisonment.").

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT AND
GRANTING MOTION TO STRIKE ~ 16

probable cause to arrest Plaintiffs.  Accordingly, Defendants are protected by qualified immunity.

Defendants note that the Complaint does not explain the theory of Plaintiffs' due process claim.  ECF No. 14 at 6-7.  Plaintiffs did not elaborate on this claim in their response, instead basing their theory of unlawful arrest on the Fourth Amendment.  ECF No. 22 at 9-11.  Plaintiffs have not adequately supported the due process claim, and summary judgment in favor of Defendants on that claim is proper as well.

*Defamation*

Plaintiffs seek damages for the allegedly defamatory statements that Deputy Chamberlain made to the media.  ECF No. 1 at 9.  To recover for defamation, Plaintiffs must establish (1) falsity, (2) an unprivileged communication, (3) fault, and (4) damages.  *Mark v. Seattle Times*, 96 Wn. 2d 473, 486 (1981).

The police have a qualified privilege in releasing information to the press. *Bender v. City of Seattle*, 99 Wn.2d 582, 601 (1983).  A plaintiff must establish abuse of this privilege by clear and convincing evidence, showing "knowledge or reckless disregard as to the falsity of a statement . . . ."  *Id.*  To defeat a motion for summary judgment based on a qualified privilege, a plaintiff must meet "the limited burden of presenting specific facts creating a genuine issue as to the question of whether the defendant's statements were made after a fair and impartial

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT AND GRANTING MOTION TO STRIKE ~ 17

investigation or upon reasonable grounds for belief in their truth." *Turngren v. King Cnty.*, 104 Wn.2d 293, 310 (1985).

Plaintiffs argue that Deputy Chamberlain made defamatory statements after their arrests, specifically his assertion to the media that "basically everything [that Lydia told officers] was corroborated" and that "all the facts that she gave about the residence, all the things that we'd find in there, our investigators did locate." *See* ECF No. 22 at 19 (emphasis omitted).  Officers did not find young women in the basement, a deadbolt on the basement door, or firearms.

However, officers did locate multiple drug pipes as well as a letter to Lydia from Franklin, whom Lydia had accused of similar abuse on a prior occasion. While the officers did not locate all of the individuals or items that Lydia had described, the search did result in evidence that corroborated Lydia's accusations. Moreover, Deputy Chamberlain's statements about the investigation were general, and he stipulated that the investigation was complicated and ongoing.  *See* ECF No. 24, Exs. K, L, M.

The Court finds that Plaintiffs have not raised a genuine issue of fact regarding whether Deputy Chamberlain had reasonable grounds to believe that his statements were true.  Deputy Chamberlain's statements are subject to the qualified privilege.  Because the statements were privileged, the Court does not reach

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT AND
GRANTING MOTION TO STRIKE ~ 18

1  Plaintiffs' contention that they need not prove actual damages resulting from the

2  defamatory statements.

3      Accordingly, **IT IS HEREBY ORDERED**:

4  1.  Plaintiffs' Motion to Strike Reply Affidavit of Detective David Skogen,

5      **ECF No. 33**, is **GRANTED**.

6

7  2.  Defendants' Motion for Summary Judgment, **ECF No. 14**, is

8      **GRANTED**.

9      The District Court Clerk is directed to enter this Order, provide copies to

10  counsel, enter judgment accordingly, and **close** this case.

11      **DATED** this 19th day of December 2014.

12

13                  *s/ Rosanna Malouf Peterson*
                ROSANNA MALOUF PETERSON
                Chief United States District Court Judge

14

15

16

17

18

19

20

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT AND
GRANTING MOTION TO STRIKE ~ 19